# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEUTSCHE BANK TRUST COMPANY AMERICAS** As Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Securities, Inc. Multifamily Mortgage Pass-Through Certificates, Series 2016-KS06 | : : : : : : : | **CIVIL ACTION** |
| v. | : : | |
| **GREENFIELD OF PERKIOMEN VALLEY, LLC** | : : | No. 23-1439 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                           **January 3, 2024**

In this mortgage foreclosure action against Defendant Greenfield of Perkiomen Valley ("Greenfield"), plaintiff Deutsche Bank Trust Company Americas ("Deutsche Bank") moves to appoint a receiver to manage Greenfield Senior Living, a residential facility encumbered by the mortgage.[1] It contends that a receiver is necessary because Greenfield's financial health is dire, it is committing waste and is impairing the loan. Greenfield opposes the motion, arguing that the proposed receiver is not qualified.

## Background

On February 5, 2016, Greenfield borrowed $12.5 million from Capital One Multifamily Finance, LLC.[2] The loan was secured by a mortgage on Greenfield Senior Living, a facility located in Schwenksville, Montgomery County, Pennsylvania.[3] Greenfield

---

[1] Deutsche Bank is trustee of the loan granted by Wells Fargo Commercial Mortgage Securities, Inc.

[2] Compl. ¶ 5, ECF No. 1.

[3] *Id.* ¶ 7.

operates a senior living facility there.[4]  The loan is secured by a mortgage, a note, and a loan agreement, covering the land and the facility.[5]  The loan was assigned to Wells Fargo.[6]

There is no dispute that Greenfield is in default. It has failed to make monthly debt payments since September 2022.[7]  On December 1, 2022, Wells Fargo sent a notice of default to Greenfield.[8]  Fifteen days later, it sent Greenfield a notice of acceleration, declaring the loan balance accelerated and immediately due and payable.[9]

Without Wells Fargo's knowledge or consent, Greenfield borrowed $400,000 from Newco Capital Group VI LLC and granted it a security interest in the mortgaged property.[10]  The loan agreement provides that a transfer of any interest in the mortgaged property constitutes default.[11]  In the event of a default, the mortgage allows Wells Fargo to declare the loan immediately due and payable and to immediately foreclose.[12]  On

---

[4] Pl.'s Mem. in Supp. of Its Mot. for Appointment of Receiver, at 1, ECF No. 8-2 ["Pl.'s Mem."] Greenfield executed a Multifamily Note (the "Note"), a Multifamily Mortgage, Assignment of Rents and Security Agreement (the "Mortgage"), and a Multifamily Loan and Security Agreement (the "Loan Agreement"). Deutsche Bank refers to the Note, the Mortgage, and the Loan Agreement collectively as the "Loan Documents." Compl. ¶¶ 6-8.

[5] Compl. ¶¶ 6-8; Loan Agreement, at 104-06 (attached to Pl.'s Mot. for Appointment of Receiver as Ex. B, ECF No. 8-5), ["Loan Agreement"].

[6] Compl. ¶ 13.

[7] Compl. ¶ 32; Opp'n of Greenfield of Perkiomen Valley, LLC to Pl.'s Mem. in Supp. of Its Mot. for Appointment of Receiver ¶ 1, ECF 11 ["Def.'s Opp'n"].

[8] Compl. ¶ 34.

[9] *Id.* ¶¶ 37-38.

[10] *Id.* ¶ 40.

[11] Compl. ¶ 25; Loan Agreement § 7.02(a).

[12] Mortgage § 31 (attached to Pl.'s Mot. for Appointment of Receiver as Ex. C, ECF No. 8-6), ["Mortgage"].

February 2, 2023, Wells Fargo notified Greenfield that the Newco transaction violated the loan agreement.[13]

Deutsche Bank accuses Greenfield of committing waste by failing to fund payroll and wrongfully diverting revenue from the property to reimburse a property management company.[14] Greenfield denies that it has not met payroll.[15] It acknowledges that it borrowed money secured by a junior lien.[16] As if it was excusable, Greenfield contends that it used part of the proceeds of the Newco loan to service the Wells Fargo loan.[17] Greenfield asserts the current management company's fees are not excessive under industry standards.[18]

Greenfield contends that Tarantino Properties, Inc., Deutsche Bank's proposed receiver, cannot serve as receiver because it is not licensed to operate an assisted living facility by the Department of Aging of the Commonwealth of Pennsylvania. So, it argues, the appointment of Tarantino as receiver would violate Pennsylvania law. It also argues the appointment would not be in the best interests of the residents at the facility.

## Analysis

Receivership is an extraordinary equitable remedy that is not routinely granted. *Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 980 (8th Cir. 2020). The appointment of a receiver is left to the broad discretion of the court. *Canada Life*

---

[13] Compl. ¶ 43.

[14] Pl.'s Mem. at 9, 11.

[15] Def.'s Opp'n ¶ 4; Aff. of Mathew A. Peponis in Supp. of Opp'n. of Greenfield of Perkiomen Valley, LLC to Pl.'s Mem. in Supp. of Its Mot. for Appointment of Receiver, ¶ 3, ECF No. 14 ["Peponis Aff."].

[16] Def.'s Opp'n ¶ 5.

[17] *Id.*

[18] *Id.* ¶ 7.

*Assurance Co. v. Alfred R. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009). There is no exhaustive or dispositive list of factors for determining whether to appoint a receiver. *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012). The purpose of a receivership is to secure, manage, protect, and preserve the property at issue. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019).

There are a number of factors that inform the decision. The factors are: the existence of a contractual right to appointment of a receiver; the validity of the movant's claim; the probability that fraudulent conduct has occurred or will occur, frustrating the movant's claim; the presence of imminent danger that the property will be concealed, lost, or diminished in value; the inability of the defendant to meet its financial obligations; the inadequacy of a legal remedy; the lack of a less drastic equitable remedy; and the likelihood the appointment of a receiver would result in more good than harm. *See e.g.*, *Morgan Stanley*, at 980-81; *Consol. Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326-27 (1st Cir. 1988); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993). Some may or may not apply in a given case.

*Contractual Provision*

The mortgage permits the lender to move for the appointment of a receiver in the event of default. Section 3(c)(ii) of the mortgage provides that in the event of default, "Lender may apply … for the appointment of a receiver … [and] Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law."[19]

---

[19] Mortgage § 3(c)(ii).

The existence of a contractual provision consenting to the appointment of a receiver weighs in favor of appointing one. *See Wilmington Tr., N.A., as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2019-C50, Commercial Mortgage Pass-Through Certificates, Series 2019-C50 v. 24 Commerce St. LLC*, No. 21-5498, 2021 WL 4786117, at *7 (D.N.J. Oct. 14, 2021). Nonetheless, such a provision is not binding on the court, but is accorded considerable weight. *CCC Atl.*, 905 F. Supp. 2d at 615.

Greenfield's consent to appointment of a receiver weighs heavily in favor of appointment, but it is still up to our discretion.[20] Consequently, all relevant factors must be considered in determining whether to appoint a receiver.

Greenfield admits that it has not paid the mortgage since September 2022.[21] Greenfield's default triggered Deutsche Bank's right to move for the appointment of a receiver. Despite having agreed to consent to the appointment, Greenfield opposes it. Given the clear language of the loan documents and its admission that it is in default, we conclude Greenfield cannot oppose the appointment of a receiver. Still, the contractual provision is not dispositive. While according it significant weight, we consider other factors in deciding whether to appoint a receiver, even where the borrower has consented to one.

*Likelihood of Success*

Greenfield's continuing failure to pay the mortgage and encumbering the property with a subordinate lien shows that Deutsche Bank is likely to succeed in the mortgage

---

[20] Greenfield does not explicitly oppose the appointment of a receiver. Instead, it questions the proposed receiver's qualifications.

[21] Def.'s Opp'n ¶ 1.

5

foreclosure action.  See *Wilmington Trust, N.A. v. Pavilion Apts. PENN LLC*, 2023 WL 187568, *5-6 (E.D. Pa. Jan. 13, 2023).  Greenfield does not dispute that it is in default.  It acknowledges that it has not made a payment on the debt since September 2022.[22]  Therefore, this factor weighs in Deutsche Bank's favor.[23]

*Financial Health/Status*

A borrower's inability to make payments when due reveals its poor financial condition, suggesting a need to preserve the property.  *Federal Nat'l Mortgage Ass'n v. Maple Creek Gardens, LLC*, 09-14703, 2010 WL 374033, *3 (E.D. Mich. Jan. 25, 2010); *see e.g., CCC Atlantic*, 905 F. Supp. 2d at 616.  That Greenfield borrowed money from another lender (Newco) in violation of the loan agreement, in part to pay Deutsche Bank, is further evidence of its financial deterioration.

Greenfield is controlled by Mathew Peponis, who owns three affiliated entities in Virginia.  The loan for the Pennsylvania property is cross-collateralized with three related loans secured by mortgages on the Virginia properties.  Each of the three related loans is in default.  Significantly, each property is under receivership.  The failures of the Virginia facilities and the Pennsylvania facility, all of which were under control of the same owner, suggest a management failure.  Greenfield offers nothing to demonstrate that it can avoid its financial demise.  Indeed, at oral argument, counsel admitted there was no prospect for emerging from its financial predicament.

---

[22] *Id.*

[23] The Loan Agreement provides that in the event of default, Borrower's revocable license to collect and receive rents "will automatically terminate" and "Lender will without Notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid." Mortgage §§ 3(b)(i), 3(b)(iii).

6

*Diminution of Value*

Deutsche Bank argues that Greenfield's failure to make payroll threatens to diminish the value of the property. Deutsche Bank has submitted an affidavit from Ariel Levin, a Vice President of CWCapital Asset Management, the special servicer for the Loan, surmising that Greenfield failed to make payroll.[24] He attests that "[i]t is our understanding that Borrower and/or Manager failed to fund payroll for the Property when due at midnight on July 21, 2023."[25] Levin does not explain the basis for his "understanding."

Greenfield counters with an affidavit from Mathew Peponis, Greenfield's owner and manager. He denies that Greenfield did not make payroll.[26] Peponis has firsthand knowledge based on his access to payroll records. Hence, we do not find that Greenfield did not make payroll.

Greenfield encumbered the property with a junior lien in violation of the loan agreement. It argues that the junior loan did not diminish Deutsche Bank's investment because part of it was used to service the loan. That does not excuse Greenfield's default. It amplifies Greenfield's inability to stay afloat.

Deutsche Bank relies on the results of a Virginia Department of Social Services (VDSS) investigation to show that Greenfield is not competent to manage the property. The VDSS found incomplete resident charts, issues with employee files, missing employee training, and expired staff licenses and certifications.[27] Greenfield also failed to

---

[24] Aff. of Ariel Levin ¶¶ 1-2, 37 (attached to Pl.'s Mot. for Appointment of Receiver, ECF No. 8-3) ["Levin Aff."].

[25] *Id.* ¶ 37.

[26] Peponis Aff. ¶ 3.

[27] Decl. of Sal Thomas ¶ 12, (attached to Pl.'s Reply Br. In Further Supp. of Its Mot. for Appointment of Receiver, ECF No. 15 [Pl.'s Reply"], ECF No. 15-2).

notify VDSS that the kitchens in their Virginia facilities had been closed, food service had been outsourced, and there was no emergency food on hand.[28] According to Greenfield, two of the Virginia facilities had outstanding payables totaling $122,416.75 and $99,961.23, respectively, demonstrating their inability to pay expenses to keep the facilities running.[29] They had past due utility bills and had failed to pay employees.[30] At a third facility, a ruptured water pipe was not repaired for several months, resulting in ten units remaining in a semi-gutted, unrepaired condition.[31] Greenfield failed to meet financial obligations. These findings of an independent agency support Deutsche Bank's contention that the properties are mismanaged.

Deutsche Bank contends that Peponis disregarded receivership orders in the Virginia cases. He did not turn over all rents collected. Instead, he sent them to a post office box. He took $83,933.30 from one facility and $31,010.81 from another, in violation of the Virginia Receivership Orders.[32] Greenfield also paid certain expenses without Receiver approval and failed to deliver required information to the Receiver.[33] Although these issues occurred at other properties, they are proof of mismanagement that have an impact on the property here. The properties are related and controlled by Peponis. The four properties are cross-collateralized. Greenfield's diverting rent payments and mismanaging the Virginia properties have diminished their value.

---

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.* ¶ 13.

[33] *Id.*

Deutsche Bank claims Greenfield has been improperly diverting income to pay a management company without paying the mortgage. Greenfield argues the management fee is reasonable and necessary.

The mortgage requires Greenfield to "apply all Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents … and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities … and other capital expenditures."[34] This provision does not prioritize payees. Managing the property to keep it generating income is purposeful and preserves the property. If the management fee is reasonable, a lender cannot complain. Someone has to run the facility.

Greenfield collects approximately $275,000 in rent a month,[35] and pays its manager, Peponis, about $13,000 a month.[36] Greenfield contends that this sum is consistent with industry standards. Tarantino charges four percent of monthly gross collections, as well as an additional $1,500 monthly receivership fee.[37] Assuming monthly rent revenues of $275,000, Tarantino's total charges would be approximately $12,500. Under these circumstances, paying a standard management fee does not diminish the property's value, but serves to preserve it and prevent further waste.

Although Greenfield's paying a management fee to Peponis is reasonable, his performance has been poor. Greenfield is unable to meet its financial obligations and is

---

[34] Mortgage § 3(b)(i).

[35] Levin Aff. ¶ 46.

[36] *Id.* ¶ 47.

[37] Tarantino Proposal, at 1 (attached to Pl.'s Mot. for Appointment of Receiver as Ex. K, ECF No. 8-14).

at risk of failing to maintain the facility.  He has mismanaged Greenfield's Virginia facilities. We conclude he cannot continue to manage the facility.

Greenfield has encumbered the property with a junior lien, which threatens Deutsche Bank's interest in the collateral and violates the loan agreement.  Therefore, we find that Deutsche Bank has shown the real possibility of harm to its interest.

*Tarantino Properties and Mr. Thomas' Qualifications*

Deutsche Bank proposes the appointment of Sal Thomas of Tarantino Properties as receiver.[38]  Thomas is a Certified Property Manager with over 30 years of experience in property management and as a receiver.[39]  He has served as a court-appointed receiver for more than 20 senior living facilities in eleven states, including Greenfield's three Virginia properties in Spotsylvania, Strasburg, and Williamsburg.[40]

Greenfield argues that Tarantino is not a suitable candidate for receiver because it is not licensed by the Department of Aging of the Commonwealth of Pennsylvania to operate an assisted living facility. It claims this disqualifies Tarantino because licenses are not transferable to persons not named in the application.[41]

Deutsche Bank responds that the license is not an issue. It claims that a receiver does not require an assignment or transfer of a license. Licensing is under the jurisdiction of the Pennsylvania Department of Human Services and regulated by the Pennsylvania Department of Health Services Licensing (DHSL).  Deutsche Bank relies on a consulting firm specializing in healthcare provider licensing.  The consultant reported that Jill

---

[38] Pl.'s Mem. at 12.

[39] *Id.*

[40] Pl.'s Reply, at 3.

[41] *See* 62 P.S. § 1009.

Kachmar, the Regulatory Manager of DHSL, advised that Tarantino could legally act in a receivership capacity.[42] She explained that because there would be no change to the legal name or identity of the license holder, neither Tarantino nor Mr. Thomas needed to be added to the license.[43]

*Inadequacy of a Legal Remedy*

Where there is no fraud and no danger of the property being devalued, and where legal remedies are adequate to protect the plaintiff's interest, the appointment of a receiver is not warranted. *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959) (citing 45 Am. Jur. §§ 26, 30); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993). But, where normal remedies are frustrated, a court may be more likely to appoint a receiver. *Id.*

Deutsche Bank has shown the defendant's management and its defaults may decrease the value of the property interest. If Greenfield continues managing the Pennsylvania facility, it is likely that the value of the collateral will continue to decrease. Foreclosure will not prevent the damage that will be done to Deutsche Bank's assets in the interim. Thus, a more drastic remedy than foreclosure is necessary.

*Balance of Interests*

Greenfield has not proffered evidence showing any harm that would result from appointment of a receiver. It states broadly that appointment of a receiver "would not be in the best interests of the seniors who reside at Greenfield's assisted living facility."[44] Greenfield also cites unfounded allegations of Tarantino's poor performance in other

---

[42] Pl's Reply at 2.

[43] *Id.*

[44] Def's Opp'n ¶ 1.

11

receivership proceedings as evidence that a receiver would do more harm than good. It argues that without evidence that "operations at the Facility will improve under the supervision" of a receiver, the motion should not be granted.[45]

If Greenfield continues to mismanage the facility, the collateral will be harmed and the residents' welfare will be endangered. Therefore, Deutsche Bank has shown that the harm that would result from denial of the motion would be greater than the harm to Greenfield.

## Conclusion

Considering Greenfield's default, its contractual consent to receivership, and its mismanagement, we conclude that the balance favors appointing a receiver. There is no less drastic alternative that will prevent harm to Deutsche Bank's interests. Therefore, we shall grant Deutsche Bank's motion for appointment of a receiver.

---

[45] *Id.* ¶ 6.